COPY

STEVEN A. GROODE, Bar No. 210500
sgroode@littler.com
HAVEN L. CLAYTOR, Bar No. 279058
hclaytor@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583

Attorneys for Defendants
AVIS BUDGET GROUP, INC., AVIS BUDGET CAR RENTAL, LLC, AVIS RENT A CAR SYSTEM, LLC, and ROBERT GUTIERREZ

FILED
2014 SEP 24 PM 3:12
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ________

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHEAL MARIGANY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP, INC., a Delaware corporation; AVIS BUDGET CAR RENTAL, LLC, a Delaware limited liability corporation; AVIS RENT A CAR SYSTEM, LLC, a Delaware limited liability corporation; ROBERT GUTIERREZ, an individual; and DOES 1 through 250, inclusive,<br><br>Defendants. | Case No. LACV14-7465 JAK(FFMx)<br><br>**DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332(a)(1), 1441, 1446]**<br><br>Complaint filed in Los Angeles County Superior Court: August 15, 2014 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF MICHEAL MARIGANY AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Avis Budget Group, Inc. ("ABG"), Avis Budget Car Rental, LLC ("ABCR"), Avis Rent A Car System, LLC ("ARCS"), and Robert Gutierrez ("Gutierrez") (collectively, "Defendants") hereby remove the above-entitled action, Case No. BC554834, from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1441 and 1446.

This Notice is based upon the original jurisdiction of the United States District Court over the parties under 28 U.S.C. § 1332 based upon complete diversity of citizenship.

Defendants make the following allegations in support of their Notice of Removal:

## JURISDICTION AND VENUE ARE PROPER

1. This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a), and is one which may be removed to this Court by Defendants pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below. 28 U.S.C. §§ 1332, 1441(a), and 1146(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c)(2), 1391 and 1446.

## GENERAL INFORMATION

3. This lawsuit arises out of Plaintiff Michael Marigany's ("Plaintiff") employment with ARCS.

4. On August 15, 2014, Plaintiff filed a Complaint in the Superior Court of the State of California, County of Los Angeles, entitled *MICHAEL MARIGANY, an individual v. AVIS BUDGET GROUP, INC.*, a Delaware corporation; *AVIS BUDGET*

*CAR RENTAL, LLC*, a Delaware limited liability corporation; *AVIS RENT A CAR SYSTEM, LLC*, a Delaware limited liability corporation; *ROBERT GUTIERREZ*, an individual; and *DOES 1 through 250*, inclusive, *Defendants,* designated as Case No. BC554834 (the "Complaint"). The Complaint asserts the following purported causes of action: (1) wrongful termination in violation of public policy; (2) retaliation against whistleblower in violation of Labor Code §§ 6310; (3) retaliation against whistleblower in violation of Labor Code § 1102.5(c); (4) retaliation in violation of public policy; and (5) intentional infliction of emotional distress. *See* Declaration of Haven L. Claytor in Support of Defendants' Notice to Federal Court of Removal ("Claytor Decl.") ¶ 2, Exh. A.

5. On August 25, 2014, Plaintiff purports to have served the Complaint with its attachments on Gutierrez at an ARCS location. Claytor Decl. ¶ 3, Exh. B. At the same time, Plaintiff delivered the Summons, Civil Case Cover Sheet, and Civil Case Cover Sheet Addendum, Notice of Case Assignment, and Voluntary Efficient Litigation Stipulations. Claytor Decl. ¶ 4; Exhs. C, D, E, and F, respectively.

6. To date, the other defendants have not been served with the Summons, Complaint or the other aforementioned documents.

7. On September 22, 2014, Defendants filed their Answer to the Complaint in the Superior Court of California, as well as Motion for Peremptory Disqualification. Claytor Decl., ¶ 5; Exhs. G and H, respectively.

8. To the best of Defendants' knowledge, no further documents from the state court action have been filed by Plaintiff. Nor have any other documents been filed in the state court action by Defendants. The attachments thereby satisfy the requirements of 28 U.S.C. section 1446(a).

9. This Notice of Removal is filed within 30 days after the initial receipt by Defendants of a copy of Plaintiff's Complaint in accordance with 28 U.S.C. section 1446(b).

10. Copies of this Notice of Removal, as well as the Notice of Filing of



LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Notice of Removal, have been served upon Plaintiff's counsel and are being filed with the Clerk of the Superior Court of California, County of Los Angeles.

11. The Complaint also names as defendants "DOES 1 through 250." Defendants are informed and believe and on that basis allege that none of the fictitiously-named defendants have been served with a copy of the Summons and Complaint. Therefore, the fictitiously-named defendants are not parties to the above-captioned action and need not consent to removal. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980); 28 U.S.C. section 1441(a).

## DIVERSITY OF CITIZENSHIP EXISTS

12. The Court has jurisdiction over this action because complete diversity of citizenship between citizens of different states exists and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

13. For purposes of removal, the citizenship of Doe Defendants are disregarded and only named defendants are considered. 28 U.S.C. § 1441(a); *see Newcombe v. Adolf Coors Co.*, 157 F. 3d 686 (9th Cir. 1998).

### A. Citizenship of Plaintiff.

14. Citizenship of a natural person is established by domicile. 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). A person's domicile is established by physical presence and an intent to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986); *State Farm Mutual Auto Insurance Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship). Moreover, "[o]nce an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship." *Altimore v. Mount Mercy College*, 420 F.3d 763, 769 (8th Cir. 2005). A person's old domicile also is not lost until a new one is acquired. *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952).

15. Plaintiff is a resident of Los Angeles County, California. (Compl., ¶ 5.) Defendants are informed and believe and on that basis alleges that Plaintiff is, and was



LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

at the time this action was commenced, a citizen of the State of California. Plaintiff's last address on file with ARCS at the time of his separation is in Los Angeles County California. Declaration of Christopher Rolletta in Support of Defendants' Notice of Removal ("Rolletta Decl."), ¶ 4. Defendant is unaware of any effort by Plaintiff to establish his citizenship outside of the State of California. Accordingly, the weight of the evidence establishes that Plaintiff is a citizen of the State of California.

**B. Citizenship of Defendants ABG, ARCS and ABCR.**

16. The United States Supreme Court has confirmed that to determine a corporation's principal place of business, a court must apply the "nerve center" test. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). In relevant part, the Court explained, as follows:

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.*, at 1041-42.

17. The "nerve center" test of a corporation's principal place of business looks to the place in which the corporation's executives and administrative functions are located. *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959) (corporation's principal place of business was New York, where its management was located, rather than Connecticut where most of its manufacturing

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

was done); *see also Diaz-Rodriguez v. Pep Boys Corp.*, 410 F. 3d 56, 60 (1st Cir. 2005) (nerve center test governs where corporation has "complex" and "far flung" activities).

18. ABG's principal place of business and headquarters are located in Parsippany, New Jersey because its executive, operational and administrative offices and functions are located in Parsippany, New Jersey, and it is a citizen of the State of Delaware, where it is incorporated. *See* Declaration of Robert Muhs in Support of Defendants' Notice to Federal Court of Removal ("Muhs Decl.") ¶ 3; *Breitman*, 37 F.3d at 564.

19. ARCS is a limited liability company organized and formed under the laws of the State of Delaware, with its principal place business and headquarters in Parsippany, New Jersey. Muhs Decl., ¶ 4. ARCS's sole member is Avis Group Holdings, LLC ("AGH"), a limited liability company organized and formed under the laws of the State of Delaware, with its principal place business and headquarters in Parsippany, New Jersey. *See id.* The sole member of AGH is Avis Car Rental Group, LLC ("ACRG"), which also is a limited liability company organized and formed under the laws of the State of Delaware, with its principal place business and headquarters in Parsippany, New Jersey. *See id.* The sole member of ACRG is Defendant ABCR. *See id.* ABCR is and was at the time this action was commenced, a limited liability company organized and formed under the laws of the State of Delaware, with its principal place of business and headquarters in Parsippany, New Jersey. *See id.* ABCR's sole member is Avis Budget Holdings, LLC ("ABH"), which was organized and formed under the laws of the State of Delaware, with its principal place of business and headquarters in Parsippany, New Jersey. *See id.*, ¶ 5. The sole member of ABH is Cendant Finance Holding Company LLC ("CFHC"), which also was organized and formed under the laws of the State of Delaware, and has its principal place of business and headquarters in Parsippany, New Jersey. *See id.* CFHC's sole member is Defendant ABG, which, as noted above, is and at all relevant

times was incorporated under the laws of the State of Delaware, with its principal place of business in New Jersey. *See id.* Thus, pursuant to 28 U.S.C. §1332(c), ABCR and ARCS's sole members are and have been at all material times a citizen of the States of Delaware and New Jersey.

### C. The Citizenship of "Sham" Defendant Gutierrez Should Be Disregarded.

20. The Court may properly disregard a non-diverse defendant if it is determined that that party's joinder is a "sham," such that no possible cause of action can be established against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"); *Farias v. Bexar County Bd. of Trustees*, 925 F.2d 866, 871 (5th Cir. 1991); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (joinder of resident defendant was fraudulent where the plaintiff failed to state any cause of action against resident defendant).

21. One need not show that the joinder of a non-diverse defendant was for the purpose of preventing removal. Rather, the question is simply whether there is any possibility that the plaintiff will be able to establish liability against the party in question. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-1319 (9th Cir. 1998), *cert. denied*, 525 U.S. 963 (1998). In an employment matter where state law clearly provides that the supervisor is an improper defendant, the case may be removed to federal court, ignoring the individual as a sham defendant. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

22. Here, Defendant Gutierrez is a "sham" defendant because Plaintiff has not stated a valid claim against him for intentional inflectional of emotional distress.

#### 1. Gutierrez's Alleged Conduct Is Not Severe or Outrageous As Matter of Law.

23. To establish a claim for intentional infliction of emotional distress against Gutierrez, Plaintiff must establish that (1) outrageous conduct by Gutierrez, (2) Gutierrez intentionally caused or recklessly disregarded the probability of causing



LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

emotional distress, (3) that Plaintiff suffered severe or emotional distress; and (4) Gutierrez's outrageous conduct was the actual and proximate cause of his emotional distress. *See Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 155 (1987). It is an issue of law whether a defendant's conduct can be deemed to be so extreme and outrageous so as to allow for recovery. *Fowler v. Varian Assn., Inc.*, 196 Cal. App. 3d 34, 44 (1987).

24. Under California law the management of personnel, even with an improper motive, is not in and of itself "extreme and outrageous." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996). As the court noted in *Janken*:

> An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency. Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If management decisions are improperly motivated the remedy is a suit against the employer for discrimination.

*Id.* (internal citations omitted).

25. Plaintiff alleges that Gutierrez suspended and ultimately terminated Plaintiff in retaliation for Plaintiff's purported workplace complaints. *See* Compl., ¶ 61. However, it is well-settled, that individual managers and supervisors are not liable for retaliation or under theory of wrongful discharge contrary to public policy. *See id.*, at 62; *Jones v. Lodge At Torrey Pines Partnership*, 42 Cal. 4th 1158, 1159, 1162 (2008)(no individual liability for retaliation); *Reno v. Baird*, 18 Cal. 4th 640, 645-46, 663 (1998) (a supervisor cannot be held personally liable under the FEHA or for discharge in violation of public policy for discrimination relating to personnel

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

management decisions).

26. The alleged conduct in this action is not even as egregious is that complained of conduct in *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128 (1989), wherein the court held that "unlawful" conduct is not outrageous. For conduct to be considered "outrageous," it must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979).

27. In *Yurick*, the Court of Appeal summarized plaintiff's difficult burden as follows:

> So far as it is possible to generalize from the cases, the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are vigorous and difficult to satisfy.

209 Cal. App. 3d at 1128-29 (quoting Prosser & Keeton on Torts (5th ed. 1984) pp. 60-61).

28. In *Yurick*, the plaintiff alleged claims of age discrimination and intentional infliction of emotional distress. In dismissing plaintiff's emotional distress claim, the court noted that our law has not "progressed to the point where we are able to afford a remedy in the form of tort damages for all intended mental disturbance. . . . The plaintiff cannot recover merely because of hurt feelings." *Id.* at 1128.

29. Rather, the rule which has emerged from the cases is that there can be no recovery on a claim for intentional infliction of emotional distress unless the conduct exceeds all bounds usually tolerated by decent society. Although the court found that the supervisor's conduct was objectively offensive, the supervisor's comments that anyone over 40 was senile, that Plaintiff was senile and a liar was not so egregiously outside the realm of civilized conduct as to give rise to actionable infliction of

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

emotional distress. *Id.* at 1129.

30. The conduct at issue in *Yurick* was more egregious to the complained of conduct in this matter and it did not rise to a tort of intentional infliction of emotional distress. Indeed, here, Plaintiff's allegations are that that Gutierrez suspended and ultimately terminated him. These allegations cannot substantiate an IIED claim against Gutierrez. As in *Yunick*, the conduct at issue in this matter cannot constitute "outrageous" conduct and cannot serve as a basis to recover under IIED.

31. Plaintiff's allegations are also insufficient to overcome the manager's privilege.

2. **The Managerial Privilege Bars Plaintiff's IIED Claim Against Gutierrez.**

32. California law explicitly prohibits employees from suing their former managers and supervisors in tort for actions occurring in the discharge of their employment duties. *See Sheppard v. Freeman*, 67 Cal. App. 4th 339, 342 (1998). The manager's privilege applies where a party acts within the course and scope of employment, and functions to protect a manager's right to manage employees:

> If that privilege protects nothing else, it protects a manager's right to manage personnel (including firing and hiring) without fear of independent liability, absent concrete and specific allegations that such actions were *entirely* for the benefit of the individual. . . . The manager's privilege thus [precludes] liability for all causes of action pled herein.

*Kacludis v. GTE Sprint Communications*, 806 F. Supp. 866, 872 (N.D. Cal. 1992) (emphasis in original). *See also Imperial Ice v. Rossier*, 18 Cal. 2d 33, 36 (1941) (existence of malice or ill will by the manager or agent toward the Plaintiff is irrelevant and will not destroy the manager's privilege); *Wanland v. Los Gatos Lodge, Inc.*, 230 Cal. App. 3d 1507, 1522 (1991) ("manager need not be acting solely in his or her employer's interest in order to claim the privilege; all that is required is proof that the employer's interest was one of the factors motivating his or her conduct or advice"); *McCabe*, *McCabe v. General Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987) (under California law, where conduct is alleged to have been in the course of

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

employment, manager's privilege precludes individual liability, even if conduct was also motivated by bias or ill will).

33. Upon finding that the manager's privilege applies, fraudulent joinder should be found. In *McCabe, supra*, the court applied the manager's privilege, found that the plaintiff failed to state a cause of action against the individual supervisors since they acted in their managerial capacity, and held that the individual defendants were fraudulently joined. 811 F.2d at 1339. Thus, removal based on diversity jurisdiction was proper. *Id.* at 1339.

34. Plaintiff's Complaint contains *no* allegation that the conduct complained of occurred for the benefit of Defendant Gutierrez individually. To the contrary, Plaintiff's purported claim for "intentional infliction of emotional distress" is simply a wrongful termination/retaliation recast as a tort claim without independent facts that would give rise to such a claim.

35. Because Plaintiff has no legally viable cause of action alleged against him, Gutierrez is a sham defendant who cannot be used to destroy complete diversity.

**D. <u>Complete Diversity Exists As No Other Parties Have Been Identified</u>**

36. There are no other identified defendants. Defendants Does 1 through 250 are wholly fictitious. The Complaint does not set forth the identity or status of any fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Thus, pursuant to Section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

37. Accordingly, after disregarding sham defendant Gutierrez, because Plaintiff is citizen of California, and Defendants ABG, ABCR, and ARCS are citizens of New Jersey and Delaware, complete diversity of citizenship exists in this case.

**THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

38. Based on a reasonable reading of Plaintiff's Complaint, the amount in controversy is clearly greater than $75,000, exclusive of interest and costs. Although Plaintiff's Complaint is silent as to the total amount of damages claimed, the failure of the Complaint to specify the total amount of damages sought does not deprive this Court of jurisdiction. Defendants need only establish by a preponderance of evidence that Plaintiff's claims exceed the jurisdictional minimum. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

39. In his Complaint, Plaintiff asserts five causes of action and prays for a myriad of monetary damages, including, loss of earnings, deferred compensation, general damages, special damages, punitive damages, attorneys' fees and interest. *See* Compl., Prayer for Relief. Although Defendants deny liability for the damages alleged in Plaintiff's Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must presume that Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is the amount that is put "in controversy" by Plaintiff's Complaint, and not how much, if anything, Defendants will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005); *see also Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint).

**A. Lost Earnings – Back Pay and Front Pay**

40. Plaintiff seeks recovery of lost earnings in connection with his claims. *See* Compl., ¶¶ 35, 42, 50, 58, and prayer. At the time of his separation from employment, Plaintiff earned $19.08 per hour. *See* Rolletta Decl., at ¶ 2. Plaintiff was classified as a full-time employee. *See id.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

41. Assuming, *arguendo*, Plaintiff were to recover back pay from the time of his separation from ARCS, which Plaintiff alleges occurred on or about August 28, 2013 (*see* Compl., at ¶ 20), until the date he filed the Complaint on August 15, 2014, Plaintiff would be entitled to at least $38,160 in lost wages (50 weeks x 40 hours per week x $19.08 per hour).

42. In addition, Plaintiff's lost earnings allegations do not contain a limit in their temporal scope. *See* Compl., ¶¶ 35, 42, 50, 58, and prayer. Front pay awards in California frequently span a number of years. *See Smith v. Brown-Forma Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1989) (front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal. App. 3d 91, 97-98 (1976) (four years). Even conservatively estimating that Plaintiff seeks front pay benefits for only the next two years, the amount of future wages in controversy in this case would total at least an additional $79,372.80 (assuming 52 work weeks per year x two years x 40 hours per week x $19.08 per hour). Thus, it may reasonably be estimated that Plaintiff's claims involving back pay and front pay alone place the amount in controversy well in excess of **$117,532.80.**[1]

**B. Emotional Distress**

43. Plaintiff also seeks emotional distress damages. *See* Compl., at ¶¶ 35, 42, 50, 58, 62 and prayer. Emotional distress damages may be considered in calculating the amount in controversy even if not clearly pleaded in the complaint. *See Simmons*

[1] Some of what is characterized as "front pay" herein would necessarily be "back pay" at the time of adjudication of Plaintiff's claims. *Lowe v. California Resources Agency*, 1 Cal. App. 4th 1140, 1144 (1991)("(B)ack pay refers to the amount that plaintiff would have earned but for the employer's unlawful conduct, minus the amount that plaintiff did earn or could have earned if he or she had mitigated the loss by seeking or securing other comparable employment."); *Pollard v. E.I. du Pont de Nemours & Co.* 532 U.S. 843, 853 (2001)("A front pay…award is the monetary equivalent of the equitable remedy of reinstatement.") Whether alleged lost wages for the months between the filing of Plaintiff's Complaint and trial is characterized as a "back pay" or "front pay" remedy, the total amount in controversy related to alleged wage loss remains the same.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

*v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp.447, 450 (S.D. Cal. 1995). Although Defendants dispute that Plaintiff is entitled to any such award, plaintiffs in employment cases have been awarded substantial sums for emotional distress. *See, e.g., Gardenhire v. Housing Authority of the City of Los Angeles*, 85 Cal. App. 4th 236, 240-241 (2002) (affirming judgment, including jury award of $1.3 million in emotional distress damages for wrongful termination in violation of public policy claim); *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001), cert. denied, 535 U.S. 1018 (2002) (award of $30,000), and *Redfield v. Insurance Co. of N. Am.*, 940 F.2d 542 (9th Cir. 1991), *overruled on other grounds*, *Dotson v. United States*, 87 F.3d 682 (5th Cir. 1996) (award of $25,000).

44. In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), *cert denied*, 127 S.Ct. 157 (2006), the Ninth Circuit upheld the lower court's finding that the amount in controversy had been established. In reaching its holding, the Ninth Circuit reasoned that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Id.* at 980. A similar result is compelled here, as Plaintiff expressly seeks damages for emotional distress and a comparable or larger amount of lost wages is at issue. Thus, based on *Kroske* and other employment cases, the emotional distress component of Plaintiff's claims adds at least **$25,000** to the amount in controversy.

45. Accordingly, with at least $25,000 in alleged emotional distress damages, and over $113,528 in lost wages, the amount in controversy easily exceeds $75,000.

C. **<u>Punitive Damages</u>**

46. In addition, Plaintiff alleges punitive damages in his Complaint. *See* Compl., at ¶¶ 36, 43, 51, 59, 63 and prayer. Punitive damages are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

*Ass'n*, 325 F. 2d 785, 787 (9th Cir. 1963); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 2003).

47. The potential punitive damages award alone against Defendants satisfies the amount in controversy. California law does not provide any specific monetary limit on the amount of punitive damages which may be awarded under Civil Code section 3294, and the proper amount of punitive damages under California law is based on the reprehensibility of defendant's misdeeds, the ratio between compensatory and punitive damages, and ratio between damages and defendant's net worth. *See Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994). Indeed, some courts have recognized that an award for punitive damages can be significant, and that in some cases, a punitive award itself could establish the amount in controversy. *See e.g., Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (concluding in a discrimination and wrongful termination case that the purpose of punitive damages is to capture the defendant's attention and to deter others from similar conduct and, thus, the plaintiff's claim for punitive damages could alone exceed the jurisdictional minimum).

48. In *State Farm vs. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 1524 (2003), the Supreme Court ruled that a single-digit ratio (i.e., no more than nine-to-one) was appropriate when issuing an award of punitive damages. Looking to how courts and juries have valued similar claims, Plaintiff's request for punitive damages alone puts a range of $36,000 to $1,000,000 in controversy (estimating approximately $36,000 - $113,000 in compensatory damages x 9 (ratio for award of punitive damages)). For example, in *Aucina, supra*, the District Court held that for purposes of diversity jurisdiction, an employer showed by a preponderance of the evidence that the amount in controversy exceeded $50,000 [the jurisdictional amount at the time] in an employment discrimination and wrongful discharge action in which the plaintiff sought compensatory and punitive damages, attorneys' fees, costs, and interest. In reaching its holding, the Court reasoned that the employer was a Fortune 500

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

company and, because the purpose of punitive damages was to capture the employer's attention and deter others from similar conduct, it was apparent that the plaintiff's claim for punitive damages alone might exceed $50,000 and additionally, the plaintiff also claimed damages for lost wages, lost benefits, and mental anguish.

49. Here, the amount in controversy on the punitive damages component of Plaintiff's claims can be measured as a multiple of the amount in controversy of lost wages, which is roughly $113,000, as set forth above. Thus, without conceding that such (or any) award is warranted, the amount in controversy on the punitive damages component of Plaintiff's claims is anywhere between $117,000 (a multiple of 1) and $1,000,000 (a multiple of 9), or more.

50. Thus, although a punitive damages award against Defendants alone could potentially exceed $117,000, most conservatively, the amount awarded in punitive damages in this matter would be at least **$50,000**.

**D. Attorneys' Fees.**

51. Plaintiff is also seeking attorneys' fees. *See* Compl., ¶¶ 35, 42, 50, and Prayer for Relief, ¶ 6. Attorneys' fees should be included in calculating the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute); *see Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (court may estimate the amount of reasonable attorneys' fees likely to be recovered by a plaintiff if she were to prevail in determining whether amount in controversy exceeds $75,000).

52. At an assumed rate of $300 per hour, Plaintiff's counsel would need to spend only 250 hours of attorney time (a conservative estimate of time spent through trial) to incur $75,000 in reasonable attorney's fees (250 x $300 = $75,000). Moreover, attorney's fees awards in employment matters often exceed $75,000. *See, Flannery v. Prentice*, 26 Cal.4th 572 (2001) (California Supreme Court upheld an award of attorneys' fees under Fair Employment and Housing Act ("FEHA") for

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

$891,042); *see also Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610, *12-13 (N.D. Cal. 2008) (on denying motion for remand, the court stated that employment discrimination claims require a great deal of preparation and effort to maintain and at Plaintiff's attorneys' claimed rate of $400 an hour, fees will likely become substantial) *citing to Simmons v. PCR Tech.,* 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (noting that in the Court's twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages and found the jurisdictional maximum was satisfied); *Akers v. County of San Diego*, 95 Cal.App.4th 1441 (lower court awarded $249,349 in attorneys' fees in wrongful termination in violation of public policy and discrimination case). Thus, an attorneys' fees award in this case could easily reach or exceed **$75,000.**

53. After compiling damages for lost wages (**$117,532**), emotional distress (**$25,000**), punitive damages (**$50,000**), and an award for Plaintiff's attorneys' fees, it is more likely than not that Plaintiff would recover in excess of $75,000. Accordingly, Defendant has carried its burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional minimum.

///

///

///

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

## NOTICE TO PLAINTIFF AND STATE COURT

54. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of the removal will be given by the undersigned to counsel for Plaintiff, and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court for the State of California for the County of Los Angeles.

Dated: September _24, 2014

Respectfully submitted,

LITTLER MENDELSON, P.C.

STEVEN A. GROODE
HAVEN L. CLAYTOR
Attorneys for Defendants
AVIS BUDGET GROUP, INC., AVIS BUDGET CAR RENTAL, LLC, AVIS RENT A CAR SYSTEM, LLC, and ROBERT GUTIERREZ

COPY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
# CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

MICHEAL MARIGANY, an individual

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

AVIS BUDGET GROUP, INC., a Delaware corporation; AVIS BUDGET CAR RENTAL, LLC, a Delaware limited liability corporation; AVIS RENT A CAR SYSTEM, LLC, a Delaware limited liability corporation; ROBERT GUTIERREZ, an individual; and DOES 1-250

(b) County of Residence of First Listed Plaintiff: Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: New Jersey
*(IN U.S. PLAINTIFF CASES ONLY)*

(c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

LAW OFFICES OF CARLIN & BUCHSBAUM, LLP
Brent S. Buchsbaum, Laurel N. Haag, Sang J. Park, Heather K. Cox
555 E. Ocean Blvd., #818, Long Beach, CA 90802
(562) 432-8933

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

STEVEN A. GROODE, Bar No. 210500; HAVEN L. CLAYTOR, Bar No. 279058
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor, Los Angeles, CA 90067
(310) 553-0308

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding ☒ 2. Removed from State Court ☐ 3. Remanded from Appellate Court ☐ 4. Reinstated or Reopened ☐ 5. Transferred from Another District (Specify) ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. §§ 1332(a)(1), 1441, 1446

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/Etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Org.
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Info. Act
- ☐ 896 Arbitration
- ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- ☐ 153 Recovery of Overpayment of Vet. Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpratice
- ☐ 365 Personal Injury-Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 American with Disabilities-Employment
- ☐ 446 American with Disabilities-Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus/Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405 (g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: LACV14-7465

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [X] Yes [ ] No | [X] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | | |
|---|---|---|
| [ ] Yes [X] No | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | | |
|---|---|---|
| [ ] Yes [X] No | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [X] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| [ ] Yes [X] No | [ ] Yes [X] No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question E, below, and continue from there. If "no," go to question D2 to the right. → | If "yes," your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question E, below. If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes [X] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?** ☒ NO ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court?** ☒ NO ☐ YES

If yes, list case number(s):

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** [signature] DATE: September 24, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |